Which is Gubala v. Time Warner Cable, Mr. Zipric. Good morning, your honors, and may it please the court. Joe Zipric on behalf of Gubala, the appellant in this case, that's the plaintiff in the class in the lower court. I would like to start by making a concession that I think is required in light of this court's ruling in Myers, which was also the subject of some filings yesterday. One of the arguments that we made in our briefs as the appellants is that Spokio and Spokio's heightened requirements do not apply to so-called substantive rights or statutes that create so-called substantive rights, as opposed to procedural rights. We argued that on that basis, this statute at issue, being a substantive right statute, was not within the province or scope of Spokio. As I understand Myers, however, that argument is now foreclosed in that Myers seems to do away with the distinction between procedural and substantive rights and says that in either case, there must be a showing of concrete harm. And if that's the case, if I'm understanding Myers correctly, then we would not prevail on this point and I will abandon it at this time. That being said, what is not foreclosed by Myers, most importantly, and what this case is now about, is that the requirement of concrete harm can still be satisfied with a showing of either tangible or intangible harm, which of course is what Spokio says. Well, you've lost me there. Concrete intangible harm? What's that? The wording or the verbiage is, however inartful, does come from Spokio. So the present point about how to meet the showing of concrete harm and sort of routing it through either tangible or intangible harm. I haven't shown harm of any sort as far as I can see. Understood. There's stuff buried in Time Warner's computer files. I have some ideas. About all its former customers. So what? We don't know what happens to that. If I'm understanding the Court's concern correctly, the language is a little inartful. However, that comes from Spokio. So what I can do, which is hopefully of some value, is explain to the Court why under the intangible or tangible standards, we win. And that stands in contrast. Wait a second. I don't understand your winning when there's no harm. Well, that's just it. The reason why there is tangible harm, let's start with that one, in this particular instance is because in the terms and conditions of the Time Warner customer agreement when you sign up, it explicitly says, and we allege in the complaint it says, we will follow essentially the Cable Act. We will expunge your information or delete your information when it's no longer required. I'm paraphrasing, but it basically parrots the Cable Act. What we allege, and what has to be taken as true, is that that provision is built into the customer agreement. But I don't know what it has to do with harm. Well, because when a person pays, just like any contractual provision... Look, everybody's computer records, telephone records, God knows what else, is sitting all over the world, right? And yet, there's very little harm. Now, every once in a while, you know, there's a fraud and someone uses this information, blackmails someone, that then is the sort of thing one can bring a suit about. But I don't see what the harm is here. Well, with respect, Your Honor, I think that actually supports our point, and I understand you loud and clear. Why is he doing this? Why would anyone bother with a lawsuit? Well, here's why. Why not wait until someone uses some of this information against you? That's precisely the point, and I think I have to, with respect, question that premise. What does he want in the way of relief against Time Warner? Well, we want injunctive relief. Unfortunately, we can't get money in civil... What does he want? He just wants an injunction. We are limited to injunctive relief because the arbitration provision, which otherwise applies, prevents us from getting damages. No, you're not limited to injunctive relief. You're limited to injunctive relief if you want to bring a class action. That's correct, yes. The arbitration provision allows for damages. That's correct, Your Honor. But you've chosen not to seek damages. We've chosen not to seek damages so that we can prevail on a class basis, albeit to the limited extent of injunctive relief. So what you want is attorney's fees. No, what we want is injunctive relief. Which, so far as I can tell, is useless unless you can identify a harm that the injunctive relief will avoid. Right, so back to Judge Ponder's question. And like my colleague, I have some difficulty seeing what the harm is. Well, here's what... Let me ask concretely. Are you offering to prove that Time Warner is storing the information in a way that is susceptible to hacking, so there is an unacceptable risk of disclosure? Yes. Actually, my argument is that implicit... No, I'm not asking about implicit arguments. I didn't see that argument in your brief. Where did you say, either in your brief or in the district court, that you're concerned about hacking or what the probability of hacking might be? I don't think the argument in the complaint or in the district court... All right, so you're not making the argument. That's fine. Well, I am. The reason I'm asking this is because the Supreme Court has held that a risk of harm is itself a basis of litigation. So one wants to know not simply whether you have alleged public disclosure of identifying information or existing identity theft, but whether you've alleged a plausible risk of that. Yes. And you now say, yes. I looked in your brief. Your brief doesn't discuss this. So... So where are you making this argument that's not in your appellate brief? So I'd like to try and answer that, if I might, Judge, and also tie this into Judge Posner's question, which I have not answered yet. Here's the point, and I think the answer to your question. Congress decided it was pretty important to not have... No, Congress decided what the rule of law would be. You have to show harm from a violation of that rule of law. Risk of unauthorized disclosure via hacking is one way of doing that. That's fine. That's why I looked in your brief to see an argument about that. I didn't find an argument. Is there something in your brief that I needed to see but have overlooked? Yes. Okay. What should I... What page do you want me to go to to see your argument about risk of disclosure? The answer is, one of the arguments... What page do you want me to go to to see your argument about risk of disclosure? Your Honour, I'm not avoiding your question. I'd love to try and answer it. It is not a page number, and shame on us for not being more explicit on this point. So I understand your question. The answer, however, is that our whole argument is that the Cable Act itself is predicated on indefinite continued retention of information. It's just not in your brief. One good thing about PDF versions of briefs is that you can search them. I searched them before the argument. I've just searched it again. This argument is not in your brief. I acknowledge that. Well, there we are. That is an argument, however, that is, on our view, implicit, and not implicit, but explicit in Congress's explanation for why this is important stuff. So to that extent, my answer to your question is that we are not abandoning that point, and we are indeed making it. You're not abandoning a point that you've never made. Right? You have to make a point before you can abandon it. If the court is asking me, do I think that the possibility of hacking... I'm not asking whether you think so. Yes, I do. I'm asking whether you have made a particular argument that I've missed, and the answer is no, you haven't made it. In answer to Judge Posner's question, I do think, however, that hacking is an important point. The Cable Act exists on this particular issue. The provision exists for one reason and one reason only, because Congress thought it would be a bad idea to wait until something disastrous happens. That's really the point. We live in a world, unfortunately, where every day we open up the paper and some new data breach has occurred and some other information has been compromised, and if you've ever been the victim of identity theft, it's no picnic, and it's really not fun to have to deal with it after the bad thing actually occurs or has already occurred. Far better for the companies not to... But for all you know, Time Warner has been hacked, and that information is on numerous other... That's right. ...all over the world. To my knowledge, Time Warner has not been hacked, at least it hasn't been reported or disclosed. They have not been hacked yet. How do you know? Well, I mean, it could have happened yesterday. How do they know? It could have happened yesterday, you're right, and it could have happened a year ago when no one knows yet. You're absolutely right. But again, that's the point. We don't want the information... We, being Congress, enacting the statute, has said we don't want the information to be retained indefinitely, because guess what? When the information is hacked, and it will be at some point, everyone is, we don't want that to be disastrous for the millions of people who are impacted. Right. That's just a different way of stating the argument that you conceded at the top of your presentation here today, which is to say that the statute creates a substantive right. Any violation is therefore actionable without a showing or even allegation of concrete harm. Not according to Spokio. And this is an important point. I see I'm out of my initial time, but I'd like to try and answer this question, if I might, Your Honor. In the Meyer case, the only argument was that the violation of the statute itself is all that you need. In this court's words, they gambled everything on that point and lost. Our argument does not suffer from that deficiency. What we're saying is, you can satisfy the standard of concrete harm with a showing, according to Spokio, we're living in a world post-Spokio, you can satisfy the standard if the statute is violated and the statute itself is, again, using the parlance of Spokio, tied to historical interests in the courts or through Congress that are at issue by the violation of the statute. Privacy, the retention of information, etc. Numerous courts in this district and in the circuit have already said retention of information is a sufficient concern. How long has Time Warner been collecting this kind of information from its subscribers? Our client terminated his account 8 years ago and the information is still on file. The practice, as we allege it, is that they just retain everything. How many people are involved? How many people have this private information in Time Warner? Well, that would be a data point in the subject of discovery if we get to that point, but millions, presumably. Millions? Millions of people are consumers of Time Warner, customers of Time Warner, and therefore there are millions of people whose information... Okay, so there'd be millions of people in the same position as your client. That's correct, Your Honor. So how many lawsuits have there been by these millions of people? There are numerous class actions against cable operators under this statute. I'm talking about Time Warner. Several. How many suits have there been against Time Warner? Several. In full disclosure... And what were the outcome of those suits? I was going to say some of those were brought by me, so just not to be obscure about that. I mean, I myself am very interested in this issue. How many suits brought by other people besides you? Maybe one... Well, a handful, I think. Okay, so you have millions of people, millions of people, and all this precious private information is squirreled away by Time Warner. Yes. And no one's ever been harmed. Well, I'm not sure that we want to get into the game of trying to figure out the persuasive way to... I mean, you argue that there's harm here, but actually there's no evidence of any harm. Well, that may or may not be true, but I wouldn't put too much weight on the existence of other lawsuits. Nobody's talking, squealing except you about the terrible consequences of having Time Warner buried your private information in some computer somewhere. I didn't mean to interrupt you, Judge Bosner. No, go ahead. I just wouldn't assess or I wouldn't allocate too much weight to the data point of how many other class actions have been filed because that's not a standard for anything. We have to look at that class action. But some... If... You'd think that if some people were worried that their Social Security number was in a Time Warner computer, they would do something. Maybe they'd just complain to the Federal Trade Commission. Wouldn't that be more... I mean, you could do that. Wouldn't that be more sensible? Go to the FTC and say, look, you know, this statute is... It's a consumer protection statute. You enforce... You know, you are a consumer protection agency. Why don't you go to Time Warner and say they shouldn't do this? Sure, no, that's a great question. The answer is... Has anyone gone to the FTC and said, look, they're violating this statute and, you know, it's consumer... We want consumer protection. So come to the Federal Trade Commission. Yeah, the answer is, sure, a person can do that and perhaps they shouldn't. Why hasn't anybody done it? Well, for one, class actions exist. It sounds like. We live in a world where... You say there are these millions of people, all their private information should have been destroyed and nobody does anything except you. You bring a few class actions and there's the Federal Trade Commission sitting there which could go to Times Warner and say, you've got to stop this. You have to destroy this stuff. It's in the statute. Nobody bothers to do that. Well, I'm not sure that's true, first of all. I'm not saying no one has done that. It's not in the record and, frankly, I wouldn't want to guess. What I am saying is that class actions exist. We live in a world where I take as a given that Rule 23 exists and Rule 23 says, yeah, private lawyers ought to be incentivized to bring violations of a statute in this case even if no one else knows about it. Good for you if you figure out there's a violation of the law going on and good for you if you bring a case that alleges a violation of that statute and you can either have Article III standing or not based on standards that have nothing to do with how many other class actions have been filed and have everything to do with whether in this particular case there's a showing of either tangible or intangible harm. And there's no showing of harm? There's absolutely no showing of harm. Not if we take the Spokio standard as a given in which... Oh, come on. There's no harm. Nobody cares. Well, Congress cares. As far as we know none of this information That's enough under Spokio. None of this information as far as anyone knows including you has ever been leaked in a way harmful or maintained in a way or somehow has harmed anybody. Well, that is perhaps true but that's also why it's rational I think for people to say I don't want to wait until some guy from Russia hacks into my information and steals my identity I'd rather have Time Warner follow the law and expunge it now. That's you. Yes, that's me and I think the statute as it happens. It's not any... Okay. Okay. Well, thank you very much Thank you, Your Honor. Mr. Sickler. Mr. Merriman? Good morning. May it please the court. Brian Merriman for Defendant and Appellee Time Warner Cable. The district court correctly held that the plaintiff lacked standing and even if he had standing he failed     this morning Spokio reinforced the fundamental requirement that the plaintiff and the defendant have the right to speak to the court and the plaintiff and the defendant that a plaintiff must allege a concrete injury to establish Article III standing and this requirement renders the harm that plaintiff here alleges a bare statutory violation insufficient to confer Article III standing. In addition to Spokio there are four recent Seventh Circuit cases that have looked at... But why doesn't Times Warner comply with they're gonna go to you say you know you're not obeying the statute Your Honor Is there a reason for that? It's not in the record but what happened here with this particular customer with a small group of Wisconsin customers was there was a glitch in the software and that this customer and a small group did not have their data um destroyed at the appropriate time but that's what happened here this is not What do you mean by appropriate time? Well the Cable Act requires that the data uh that cable companies uh destroy the data when it's no longer needed for business purposes so for example um just because a customer terminates his or her service doesn't mean it's no longer needed uh the company is allowed to keep it for legal purposes for example as long as it meets various statutes of limitation it has to keep certain data either in individual or aggregated form for tax and accounting purposes and all that is provided for um in the statute and also is mentioned in Time Warner Cable's privacy policy which council mentioned as part of the agreement between the customer and the company uh so when exactly uh a customer's data is required to be destroyed under the Cable Act varies um on uh depending on those various requirements uh so this court the Seventh Circuit has looked at this issue in various forms uh in the last in four cases in the last really five cases in the last few years starting with Sterk v. Redbox and proceeding up through as recently as last month in Myers v. Nicolet Restaurant and two of those cases uh the Diedrich v. Ockwin case and the Myers case um the opinions were written post-spokio and um incorporated a spokio analysis into the opinions and this court has been clear in all of those cases all five of the cases and especially even pre-spokio and especially post-spokio that uh a statutory violation does not itself constitute a concrete harm uh and as counsel mentioned in Myers just last month this court uh ruled that it doesn't matter whether the right is characterized as procedural or substantive um the violation of the right must be accompanied by injury in fact or there's no harm and as the Myers court put it there's no federal case. The plaintiff here uh is his allegations of harm are unquestionably deficient under spokio. There's no allegation uh real allegation whatsoever other than a violation of a statutory harm. Now more recently in the appellate briefing in the lower court the plaintiff devoted one sentence to some theories that they've spent a lot of time on in the appellate briefing and in the lower court uh in the supplemental briefing that the district court asked for after spokio was um issued the plaintiff had one sentence where they mentioned this theory that the Time Warner Cable's retention of data somehow created a concrete harm. Um here has there been discussion of attorneys fees? The reason I ask is that I could imagine you saying well all right get off our back we'll destroy this these data but um so I'm wondering whether concern with a class action lawyers attorney fees is making Time Warner stubborn? Well no your honor because in this case um the plaintiff's counsel would just encourage more losses. This plaintiff's counsel has sued the entire cable and satellite No I understand why you don't want to pay fees but couldn't you have um simply destroyed these data and um voluntarily just to or would they say well the suit had provoked you to do that is that what you're worried about? I'm sorry your honor what would they say? They'd say their suit had provoked you to do that and therefore they were entitled attorney's fees is that what they are? There's no question I there's I've never worked on a class action where the company in many cases companies are going through changes that they do in the ordinary course of business and anything that happens after the date of a lawsuit the plaintiffs always take the position that that was the result of the case even if it's done in the ordinary course of business here your honor I do want to mention um the theory that the plaintiff has pursued on appeal just quickly in case the court addresses them in its opinion and those theories are really that they tried to create a theory that their allegations of harm are there are allegations of harm in the complaint as a result of the alleged retention of his data and one of the theories has to do with that there's been a violation of the plaintiff's privacy interest in his personal information and I think they're trying to latch on to justice Thomas's concurring opinion in Spokio um but that theory requires um an invasion of privacy rights. All the common law historical common law privacy rights cause of action required an invasion of privacy rights which hasn't happened here. There's no allegation whatsoever of a data information in any unauthorized way. There's no allegation whatsoever of any of those things and there I should also mention in addition to the four seven circuit cases the eighth circuit addressed this exact same case um with the charter communications filed by this plaintiff's counsel making the same allegations and the exact same arguments were made to the eighth circuit and in the Breitberg opinion the eighth circuit categorically rejected all of the argument that there was diminution in value in his contract with Time Warner Cable because the information wasn't destroyed. The Breitberg case in the eighth circuit rejected this argument and the seventh circuit has looked at that case and in dicta the seventh circuit used the word dubious to describe the plaintiff's allegation that he had a concrete injury in the loss of private information and in the Leward case the seventh circuit in dicta used the word skeptical to reject the plaintiff's claim that he had a property right in his personal information. In addition this council filed a case in California in 2012 Burton v. Time Warner Cable which was made the exact same allegations made here and some additional allegations about violations of section 551 in a similar California statute and the Central District of California dismissed granted the motion to dismiss and did a survey of cases across the country at that time 2013 and found no legal or factual support for the idea that just the retention of personal information had some economic value finding it too conjectural  all of these arguments of harm have been addressed before by the 7th Circuit and other courts and the 8th Circuit and been rejected. Okay, thank you Mr. Merriman. Now Mr. Sippert, your time has expired but you can have another minute if you'd like. Just briefly Your Honors, there's only one issue here this morning that the court needs to resolve and that is do we have Article 3 standing to pursue claims for interruptive relief? That's it. It's just Article 3 standing. The court doesn't need to decide or care about at this stage whether we should win or lose, whether we'll get a class certified, whether people across the world are outraged over this practice or maybe not so much. The only thing that matters is whether we have Article 3 standing. And I would submit that this case on that issue alone is a dead bang winner under Stirk. The 2012 case from this court that held I think in no one certain terms the plaintiffs there suing under an almost identical statute had claims or excuse me had standing to pursue  on what the harm really was and what were the damages and so forth. But even then the court still held that the plaintiff had standing to pursue claims for injunctive relief. That's all I am asking the court to rule on today and in this appeal. Stirk was a statutory interpretation case it wasn't a standing case. Well in the course of deciding what the statute meant the court held that the plaintiff did have Article 3 standing for injunctive relief. So Spokio doesn't change the fact that under Stirk we win on this issue of Article 3 standing. Spokio does not change any of that. And so as long as the court is inclined to do no more than just what it already did in Stirk we would at least win on this threshold Article 3 standing issue for that reason. All the other issues that will come later are different points but they're not before the court and that's really all we need is just a reversal on the Article 3 standing issue. Okay, well thank you Mr. Cipriano and Mr. Merriman. We move to our next case.